UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JOE SALAZAR, E AL. | CIVIL ACTION NO. 6:15-cv-00939 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| WOOD GROUP PRODUCTION SERVICES, INC., ET AL. | BY CONSENT OF THE PARTIES |

## MEMORANDUM RULING

Currently pending is defendant Renaissance Offshore, LLC's motion for summary judgment. (Rec. Doc. 30). The motion is opposed, and oral argument was held on March 23, 2017. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, this Court denies Renaissance's motion.

### BACKGROUND

On February 22, 2014, plaintiff Joe Salazar was employed by Tannin Energy Services, Inc. as a compressor mechanic. He was assigned to work on a fixed production platform located at West Delta Block 152-A in the Gulf of Mexico, off the coast of Louisiana on the Outer Continental Shelf. It is undisputed that the platform was primarily owned by Renaissance Offshore, LLC and operations were being conducted on the platform by defendants Wood Group Production Services, Inc. and/or defendant Wood Group PSN, Inc.

The contract between Renaissance and Tannin required Tannin to provide a mechanic for the platform. The Master Service Agreement between Renaissance and Tannin states that Tannin is an independent contractor and that all of Tannin employees "shall remain under [Tannin's] direct and sole supervision and control at all times."

It is undisputed that Salazar first went out to the platform on February 21, 2014 and he left the platform at the end of his regular shift on February 27, 2014. Although he checked the gauges on some equipment on the platform on his first day on the platform, he testified at his deposition that he did not know that he was also supposed to take care of equipment in a generator room on the platform. (Rec. Doc. 32-1 at 10). Thus, he very likely went to that room for the first time on the morning of February 22, 2014. He testified that his duties included monitoring the operation of two compressors located upstairs and two generators located in a downstairs generator room. He claims that he fell in the generator room on the morning of February 22 due to oil that leaked from the number one generator. (Rec. Doc. 32-1 at 10-11).

According to Salazar, after he entered the generator room on the morning of February 22 to check gauges and take readings, he walked around the number two generator, and then slipped on oil on the floor, injuring his neck and back. He claims

that he did not see the oil on the floor because the lights in the generator room were not working. (Rec. Doc. 32-1 at 11). However, he knew before he went in the room that the lights were not working, and he was equipped with a flashlight. (Rec. Doc. 32-1 at 11). The plaintiff testified that the oil on the floor of the generator room came from "[t]he rear seal, the inspection plate, and the oil pump" of the number one generator. (Rec. Doc. 30-2 at 12).

There were no witnesses to the accident. Salazar did not fill out an accident report. His daily report indicates both that there was an oil spill in the generator room that day and also that he cleaned the floor in the generator room that day, but it does not indicate that he fell or sustained any type of injury. (Rec. Doc. 30-5 at 16). Salazar claims that he told his Wood Group supervisor Dirk Deshotel that he had fallen and was injured. (Rec. Doc. 30-2 at 4). Deshotel denies this. (Rec. Doc. 30-4 at 2, 38). Salazar filled out a written accident report about a month after the alleged accident occurred.

There is no evidence that there were any Renaissance employees on the platform at the time of the alleged accident. Therefore, Deshotel, a Wood Group employee, was in charge. Deshotel testified that Renaissance owns the generator that was allegedly leaking. (Rec. Doc. 32-2 at 6). Renaissance argued in support of its motion that Tannin and its employee Salazar were in control of the generator room

and responsible for its maintenance and that of the equipment in the generator room at the time of the accident, and Salazar's deposition testimony generally supports that conclusion. (Rec. Doc. 30-2 at 10-11; Rec. Doc. 32-3 at 4).

There is no evidence that the plaintiff knew about the alleged generator leak before he fell. The plaintiff testified that he has no idea how long the generator was leaking before his fall. (Rec. Doc. 30-2 at 12.). He has no evidence that anybody at Wood Group or Renaissance knew there was oil on the floor of the generator room. (Rec. Doc. 30-2 at 11-12). Salazar stated that he believed the oil had been on the floor for a while because there were absorbent pads on the floor that he assumed the previous mechanic had put down to absorb the leaking oil. (Rec. Doc. 32-1 at 7). He was the only Tannin employee on the platform (Rec. Doc. 30-2 at 15). Deshotel was not aware of any problem in the generator room. (Rec. Doc. 30-4 at 7). Had he known about a problem in the generator room, he would have reported it to Renaissance. (Rec. Doc. 32-2 at 6).

In opposition to the motion, the plaintiffs offered the affidavit and expert report of Ken Kaigler, who opined that Renaissance was responsible for the accident because it failed to keep the walking area of the platform free of oil and grease, the platform lacked the proper non-skid grating, the lighting in the generator room was

improper, and Renaissance failed to require that the generator be repaired so as to prevent it from leaking oil. (Rec. Doc. 72).

## Analysis

### A. THE SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[1] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[2]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[3] If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the

---

[1] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[2] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252); *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[3] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

existence of a genuine issue of a material fact.[4] All facts and inferences are construed in the light most favorable to the nonmoving party.[5]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[6] The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[7]

### B. LOUISIANA LAW GOVERNS THE CLAIMS AGAINST RENAISSANCE

Subject-matter jurisdiction in this case is premised on the jurisdictional provision of the Outer Continental Shelf Lands Act ("OCSLA").[8] The law of Louisiana, the adjacent state, governs the plaintiff's claim against Renaissance

---

[4] *Washburn v. Harvey*, 504 F.3d at 508.

[5] *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[6] *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[7] *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[8] 43 U.S.C. §1349.

because the controversy arises on a situs covered by the OCSLA, maritime law does not apply of its own force, and Louisiana law is not inconsistent with federal law.[9]

The plaintiff alleged in his petition for damages that his accident and resulting injuries were the result of the defendants' carelessness, recklessness, and negligence. More particularly, the plaintiff alleged that the defendants were negligent for, *inter alia*, failing to maintain the platform in a proper and safe condition, failing to alleviate potentially hazardous and unsafe conditions, failing to discover or replace defective conditions, failing to provide safe and proper flooring and floor covering, failing to properly maintain its equipment, and failing to provide adequate lighting.

Under Louisiana Civil Code Articles 2317 and 2317.1, persons are responsible for objects in their custody. Article 2317.1 expressly provides that "[t]he owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care." Therefore, the plaintiff's premises liability claim against Renaissance requires him to prove the following elements: (1) the object was in

---

[9] 43 U.S.C. 1333(a)*; Union Texas Petroleum v. PLT Engineering, Inc.,* 895 F.2d 1043, 1047 (5th Cir. 1990).

Renaissance's custody; (2) the object had a condition that created an unreasonable risk of harm to persons on the premises; (3) the unreasonably dangerous condition was a cause-in-fact of the resulting injury; and (4) the defendant knew or should have known of the defect, (5) the damage could have been prevented by the exercise of reasonable care, and (6) the defendant failed to exercise reasonable care.[10]

### C. IS RENAISSANCE ENTITLED TO SUMMARY JUDGMENT IN ITS FAVOR?

This Court interprets the plaintiff's complaint and the arguments presented by the plaintiff in opposition to Renaissance's motion for summary judgment as articulating only a premises liability claim under Louisiana Civil Code Articles 2317 and 2317.1. Therefore, although Renaissance argued that it is not liable to the plaintiff under other potential bases for liability, those arguments will not be addressed. Only the premises liability claim will be addressed.

The plaintiff contends that the allegedly leaky generator was owned by Renaissance, making Renaissance responsible for any accident or injury resulting from the oil leak. With regard to the first element, custody, the Court finds that there is a genuinely disputed issue of material fact. Ownership of an object establishes a rebuttable presumption of custody or "garde" over the object.[11] One way to rebut the

---

[10] *Cormier v. Dolgencorp, Inc.*, 136 F. App'x 627, 628 (5th Cir. 2005).

[11] *Coulter v. Texaco, Inc.*, 117 F.3d 909, 914 (5th Cir. 1997).

presumption is by establishing a contractual undertaking by another to maintain and control the property.[12] A defendant who is not the owner of the allegedly defective thing may be found to have custody over property when he exercises direction and control of the thing and derives some benefit from it."[13] Whether the law imposes a duty of custody or garde on a particular person or entity is a factual inquiry.[14]

In this case, the plaintiff argued that Renaissance's ownership of the allegedly leaky generator mandates a finding that Renaissance had custody of the generator at the time of the alleged accident. While there is evidence that Renaissance was the owner of the generator, and Deshotel testified that he would report problems with any of the generators to Renaissance, Renaissance argued that it ceded custody of the generator to Tannin by contracting with Tannin to provide compressor mechanics such as Salazar to maintain the generator and repair it if necessary. Salazar admitted that Tannin was solely in control of the area where the accident allegedly occurred and that during his hitch on the platform he was the only person who worked in that area. Thus, there is a genuinely disputed factual issue concerning whether Renaissance or Tannin had custody of the generator at the time of the accident.

---

[12] *Davis v. Riverside Court Condominium Association Phase II, Inc.*, 14–0023, p. 6 (La. App. 4 Cir.11/12/14), 154 So.3d 643, 648.

[13] *Coulter v. Texaco, Inc.*, 117 F.3d 909, 914 (5th Cir. 1997).

[14] *Doughty v. Insured Lloyds Ins. Co.*, 576 So.2d 461, 464 (La. 1991).

Therefore, on the record as it exists at this time, there is a genuinely disputed factual issue concerning one of the elements that a plaintiff must prove to prevail under Civil Code Article 2317.1. That dispute precludes summary judgment in Renaissance's favor.

The plaintiff presented the affidavit of expert witness Kenneth Kaigler in opposition to Renaissance's motion. (Rec. Doc. 72). But the affidavit does not resolve the issue of which entity had custody of the allegedly leaky generator at the time of the accident. Therefore, the affidavit does not resolve the factual dispute precluding summary judgment in Renaissance's favor.

There are also allegations that the floor was defective in that it did not have the appropriate surface to minimize a slip risk from oil in the generator. This could include non-skid, grating or some other type of surface. Pictures of pads on the deck of the generator room do not establish the type/design of the deck and whether it does or does not present an unreasonable risk of harm. Therefore, there is a genuine issue of material fact whether the design of the deck itself created an unreasonable risk of harm, and whether Renaissance, as the owner of the platform, knew or should have known of that condition.

Finally, there is evidence that the lighting in the generator room was inadequate. There is no evidence whether this was entirely due to maintenance or

whether there was inadequate lighting as part of the design. Therefore, the evidence presents a genuine issue of material fact as to whether the lighting system was so inadequate as to present an unreasonable risk of harm, and whether Renaissance knew or should have known of this lighting system.

## CONCLUSION

For the foregoing reasons, the Court finds that there is a genuinely disputed issue of material fact concerning whether Tannin or Renaissance had custody of the platform's number one generator and generator room at the time of Salazar's alleged accident, whether the flooring on the deck in the generator room presented an uneasonable risk of harm and whether the lighting system itself created an unreasonable risk of harm. All three involve at least one of the elements the plaintiff must prove in order to prevail on his premises liability claim. The existence of this factual issues precludes summary judgment in Renaissance's favor. Accordingly,

IT IS ORDERED that Renaissance Offshore, LLC's motion for summary judgment (Rec. Doc. 30) is DENIED.

Signed at Lafayette, Louisiana on this 24th day of March 2017.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE